NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NOOR MOODNEY, <br><br> Plaintiff, <br><br> v. <br><br> CAROLE JOHNSON, *et al.*, <br><br> Defendants. | Case No.: 20-cv-14983 <br><br> **OPINION AND ORDER** |

**CECCHI, District Judge.**

This matter comes before the Court by way of defendants the State of New Jersey and former New Jersey Department of Human Services Commissioner Carole Johnson's (together, "Defendants") motion to dismiss (ECF No. 18) pro se plaintiff Noor Moodney's ("Plaintiff") complaint (ECF No. 1, the "Complaint"). Plaintiff opposed Defendants' motion (ECF No. 19, "Pl. Opp."). On November 21, 2022, this Court ordered the parties to submit supplemental briefing on issues of administrative exhaustion under the Randolph-Sheppard Act ("RSA") and preclusion arising from prior state court rulings. ECF No. 44. Both parties submitted supplemental briefing (ECF Nos. 51, 52) and Plaintiff filed a response to Defendants' supplemental briefing (ECF No. 55). On June 30, 2023, this Court ordered the parties to submit further supplemental briefing on issues related to administrative exhaustion under the RSA. ECF No. 116. Both parties submitted supplemental briefing (ECF Nos. 130, 131). The Court decides this motion without oral argument pursuant to Fed. R. Civ. P. 78(b). For the reasons set forth in this Opinion, Defendants' motion to dismiss is granted.

**I.     BACKGROUND**

Plaintiff, a deaf-blind person, filed this action against the State of New Jersey and its then Department of Human Services Commissioner, Carole Johnson, alleging violation of his civil rights. Plaintiff claims that Defendants denied him services and discriminated against him on account of his disability in violation of the Americans with Disabilities Act of 1990, 42 U.S.C.A. § 12101 et seq., Rehabilitation Act of 1973, 29 U.S.C.A. § 701 et seq., and the RSA, 20 U.S.C. § 107 et seq.

**A.  Factual History**[1]

The Plaintiff received services from the Commission for the Blind and Visually Impaired ("CBVI") to facilitate his application to operate vending services in federal buildings. Complaint ¶ 26. His efforts bore fruit on October 6, 2016, when he was awarded the contract to operate vending services at the Martin Luther King Jr. Courthouse in Newark, New Jersey (the "MLK Courthouse location"). *Id.* ¶ 36.

In 2017, Plaintiff placed two additional bids to expand his operations; one was successful and the other was not. On March 24, 2017, Plaintiff bid for the vending services contract at the Hudson County Courthouse, but the contract was awarded to a different bidder. *Id.* ¶ 39. On August 29, 2017, Plaintiff submitted a bid for the Paramus Veterans Home and was awarded the contract. *Id.* ¶ 41.

Early the next year, Plaintiff's vending license was temporarily suspended. On January 16, 2018, Plaintiff received a letter from Mr. Truesdale, a Program Specialist, notifying him that his vending license was suspended for thirty days due to an issue at his Paramus Veterans Home

---

[1] For the purposes of this motion to dismiss, the Court accepts the factual allegations in the FAC as true and draws all inferences in the light most favorable to the Plaintiff. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

location. *Id.* ¶ 42. After the thirty days had run, Plaintiff sought to reopen the MLK Courthouse location on February 20, 2018. *Id.* ¶ 43. When he attempted to do so, however, Plaintiff alleges that James Lockwood, the building manager, informed him that he needed a letter from the agency confirming the end of his suspension. *Id.* According to Plaintiff, Mr. Truesdale refused to provide this letter "without giving [Plaintiff] any reason." *Id.* Plaintiff then appealed the suspension, and before his hearing at the Office of Administrative Law ("OAL"), the case was settled. *Id.* ¶ 44. The settlement terms included reinstating his license and allowing him to reopen the MLK location—which he did on April 24, 2018. *Id.* ¶¶ 44-45.

The next month, Plaintiff was instructed to leave the MLK location due to issues with his security clearance. Specifically, on May 2, 2018, Lockwood informed Plaintiff that he needed to vacate the MLK location because his federal security clearance had expired. *Id.* ¶¶ 47, 49. On May 8, 2018, Plaintiff was instructed to remove his inventory from the MLK location and was offered an opportunity to provide vending services at a private location, which he declined. *Id.* ¶ 48.

After learning of his security clearance issue, Plaintiff filed a motion to enforce the earlier settlement in the OAL—in essence seeking to remain at the MLK Courthouse location. *Id.* ¶ 49. Mr. Truesdale submitted a certification stating that Lockwood had informed Plaintiff that his federal clearance had expired, and therefore, he was not authorized to operate vending services at the MLK location. *Id.* Plaintiff refused to vacate the MLK location and surrender his keys. *Id.* ¶ 53. Plaintiff's items were eventually removed from the MLK vending facility. *Id.* ¶ 58.

Later in 2018, bidding for the Hudson County Courthouse location had reopened and Plaintiff did not win the bid, which was instead awarded to Ricky Khalil. *Id.* ¶55. On November 16, 2018, Plaintiff submitted complaints about the Hudson County Courthouse bid decision to

3

Bernice Davis, the Executive Director of CBVI, and to Defendant Johnson, but alleges that neither responded. *Id.* ¶ 57.

In the ensuing months, Plaintiff made a complaint to the Division on Civil Rights, and Plaintiff alleges that an investigator noted that the Executive Director of CBVI had failed to respond. *Id.* ¶ 60. Despite further attempts to contact the Director of the Division on Civil Rights and Defendant Commissioner Johnson via email on January 22, 2019, and April 29, 2019, Plaintiff claims that Johnson did not transmit his request to the OAL. *Id.* ¶¶ 66, 72.

On December 4, 2019, Plaintiff was also awarded a new vending location—the Rodino Building snack bar. *Id.* ¶ 60.

Plaintiff has also alleged that the elections for the CBVI Board of Trustees are "rigged," that the amendments to the RSA violated his rights, and that the Commission failed to accommodate his disability. *Id.* ¶¶ 74, 80-81.

**B. Procedural History**

In his Complaint, Plaintiff alleges six counts against the State of New Jersey and Commissioner Carole Johnson, including: violations of the Americans with Disability Act (Counts 1 and 6); a violation of the Rehabilitation Act of 1973 (Count 2); a violation of the Randolph Sheppard Act (Count 3); N.J.A.C. 10:97 due process violations (Count 4); and a Fourth Amendment violation (Count 5). Complaint ¶¶ 94-171. Plaintiff served Commissioner Johnson, "in her official capacity" and the State of New Jersey on October 30, 2020. ECF No.4. After having received an extension of time to answer (ECF No. 8), Defendants still failed to file a timely answer, so default was entered on February 22, 2021 (ECF No. 9). Defendants moved to set aside the default (ECF No. 10) and this Court granted Defendants' motion (ECF No. 15).

Subsequently, Plaintiff filed a Motion for Reconsideration (ECF No. 16), which this Court denied (ECF No. 45), and Defendants moved to dismiss (ECF No. 18).

## II.  LEGAL STANDARD

To survive dismissal under Rule 12(b)(6), a complaint must meet the pleading requirements of Rule 8(a)(2) and "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). In evaluating the sufficiency of a complaint, a court must also draw all reasonable inferences in favor of the non-moving party. *Phillips*, 515 F.3d at 234. Ultimately, a complaint "that offers 'labels and conclusions' or . . . tenders 'naked assertions' devoid of further factual enhancement," will not withstand dismissal under Rule 12(b)(6). *Iqbal*, 556 U.S. at 678 (citations omitted). Pro se complaints are liberally construed and held to less stringent standards than pleadings drafted by lawyers. *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013) ("[P]ro se litigants still must allege sufficient facts."). A pro se complaint will be dismissed if "it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Mishra v. Fox*, 197 F. App'x 167, 168 (3d Cir. 2006) (citation omitted).

## III.  DISCUSSION

### A.  The RSA's Administrative Remedies

Defendants assert that Plaintiff's complaint must be dismissed because he has failed to exhaust the administrative remedies required under the RSA. The statute, 20 U.S.C. § 107d-1(a), outlines a multi-step process that licensees must follow when they are "dissatisfied with *any* action arising from the operation or administration of the vending facility program." 20 U.S.C. § 107d-1(a) (emphasis added). First, the licensee may "submit to a State licensing agency a request for a full evidentiary hearing." *Id.* Second, if a licensee "is dissatisfied with any action taken or decision

5

rendered as a result of such hearing, he may file a complaint with the Secretary [of Education] who shall convene a panel to arbitrate the dispute." *Id.*; *see also* 20 U.S.C. § 107d-2. The "decision of such panel shall be final and binding on the parties," 20 U.S.C. § 107d-1(a), except that the panel's decision is subject to judicial review. 20 U.S.C. § 107d-2(a); *see also Randolph-Sheppard Vendors of Am. v. Weinberger*, 795 F.2d 90, 102 (D.C. Cir. 1986). Judicial review of a final agency action is "severely circumscribed," *Weinberger*, 795 F.2d at 103, and limited by the parameters of the Administrative Procedure Act, 20 U.S.C. § 107d-2(a). *See also Jones v. DeNotaris*, 80 F. Supp. 3d 588, 595 (E.D. Pa. 2015).

Courts have consistently held that "arbitration is *mandatory* for claims arising from the RSA." *Kentucky, Educ. Cabinet, Dep't for the Blind v. United States*, 424 F.3d 1222, 1229 (Fed. Cir. 2005) (emphasis added); *Henderson v. Missouri Dep't of Soc. Servs.*, No. 17-cv-2074, 2019 WL 5085870, at *5 (E.D. Mo. Oct. 10, 2019) ("[A]rbitration under the RSA is a *mandatory* administrative prerequisite for aggrieved vendors seeking judicial relief.") (citing *Kansas by & through Kansas Dep't for Children & Families v. SourceAmerica*, 874 F.3d 1226, 1243 (10th Cir. 2017) (emphasis added); *DeNotaris*, 80 F. Supp. 3d at 597 ("[T]o permit a direct, private right of action by a vendor against the federal agency would wholly frustrate the [RSA's] dual procedure of administrative and arbitration remedies for resolving disputes." (internal citation omitted); *Weinberger*, 795 F.2d at 103 ("It is unlikely, after establishing a specific dispute resolution system and conditioning judicial review on a final agency action, that Congress contemplated that an aggrieved party could, whenever it chose, circumvent the system and seek *de novo* determination in federal court.").

These mandatory exhaustion requirements apply so long as the action "aris[es] from the operation or administration of the vending facility program." 20 U.S.C. § 107d-1(a). This is true

6

whether the claims are brought under the RSA, or any other federal or state laws. *See Patten v. District of Columbia*, 9 F.4th 921, 926 (D.C. Cir. 2021), *reh'g denied*, 2021 U.S. App. LEXIS 31158 (D.C. Cir. Oct. 15, 2021) ("The exhaustion requirement thus applies so long as the aggrieved parties are licensees and the challenged actions involve operation or administration of the program."). For instance, in *DeNotaris* the plaintiff attempted to pursue a lawsuit in federal court wherein he alleged violations of 42 U.S.C. Section 1983 and the Randolph-Sheppard Act, as well as the Americans with Disabilities Act ("ADA") 42 U.S.C. §§ 12131-34. *See* 80 F. Supp. 3d at 592. The Court dismissed all claims with prejudice because the RSA exhaustion requirements had not been satisfied and the RSA is "incompatible with [non-RSA causes of action] to the extent that a plaintiff seeks to use [non-RSA causes of action] to remedy alleged violations of the RSA, because the RSA provides its own remedial framework." *Id*. at 595.

Likewise here, Plaintiff seeks to circumvent the RSA remedial framework by bringing other types of causes of action in addition to his claim under the RSA. The ADA and Rehabilitation act claims relate to the CBVI's RSA decision in temporarily suspending his RSA license. *See* Complaint ¶¶ 106, 114. The Fourteenth Amendment Due Process claim is a roundabout allegation regarding the CBVI's procedures for making quintessential RSA decisions. *See id.* ¶ 131. And the Fourth Amendment claim concerns the CBVI's actions under the RSA to secure the licensee's belongings once the license was temporarily suspended. *See id.* ¶ 155. In short, Plaintiff is an RSA licensee and although he brings claims under a variety of federal laws, all the incidents at issue involve the operation or administration of the RSA vending program. Accordingly, if Plaintiff has not satisfied the RSA exhaustion requirements, Plaintiff's other causes of action must fail.

### B. Plaintiff Failed to Exhaust the RSA Administrative Remedies

Plaintiff has failed to exhaust all administrative remedies under the RSA. ECF No. 19 at 13-15 (Plaintiff admitting that he never filed any grievances to the Secretary of Education). For most of the incidents complained of, it is unclear if Plaintiff even requested a full evidentiary hearing, which would have been the first step in the required exhaustion procedures. 20 U.S.C. § 107d-1(a). A few portions of the Complaint, when liberally construed, appear to allege that Plaintiff did request such a hearing for some of the incidents at issue. *See e.g.,* Complaint ¶¶ 65-66, 72. Regardless, as noted previously, if Plaintiff was "dissatisfied" with Defendant's decisions related to his hearings or requests for hearings, he should have filed a grievance with the Secretary of Education, who would then have "convene[d] a panel to arbitrate the dispute." 20 U.S.C. § 107d-1(a); *see also* 20 U.S.C. §107b(6) (the State Licensing Agency shall "provide to any blind licensee dissatisfied with any action arising from the operation or administration of the vending facility program an opportunity for a fair hearing, and to *agree to submit the grievances of any blind licensee not otherwise resolved by such hearing to arbitration* as provided in section 107d–1 of this title") (emphasis added). Plaintiff does not appear to allege anywhere in the Complaint that he made any such grievances to the Secretary of Education. This omission is fatal to Plaintiff's claims.

### C. None of the Exceptions to the RSA Exhaustion Requirement are Satisfied

There are three limited exceptions to the RSA exhaustion requirement, but none apply here. This Court could excuse Plaintiff's failure to exhaust if Plaintiff showed: (1) that requiring exhaustion would result in irreparable harm unless immediate judicial review is permitted, (2) that the administrative remedy is inadequate, or (3) that the administrative body is biased, making recourse to the agency futile. *Weinberger*, 795 F.2d at 104-07. Although somewhat difficult to

8

parse, construed liberally, Plaintiff's argument appears to rely on the second exception—that the administrative remedy is inadequate because he was not able to fully participate in the RSA grievance process. *See* ECF No. 44 at ¶ 4. In his second supplemental brief, Plaintiff seems to argue that he was not able to do so because he was "not afforded any administrative hearings regarding the issues [he] complained about." ECF No. 131 at 9.

The inadequacy exception, however, applies only when an agency is procedurally unable to grant adequate relief under the relevant black-letter law. *See Nisnick v. United States Postal Serv.*, 242 F. Supp. 3d 341, 348 (D.N.J. 2017) (holding that inadequacy exception applied where package insurance claim was adjudicated fully, there was "nothing to indicate" that the relevant agency would change its position, and the plaintiff had "no reasonable prospect of obtaining relief"); *see also Ala. Dep't of Rehab. Servs. v. U.S. Dep't of Veterans Affairs*, 165 F. Supp. 2d 1262, 1275 (M.D. Ala. 2001) (holding that inadequacy exception did not apply because there was "no showing" that the relevant federal entity would be "unable to come into compliance" with the RSA). Here, Plaintiff could and should have proceeded to the next step of the RSA's required administrative procedure—a grievance to the Secretary of Education—which would have provided him with an opportunity to obtain the relief he sought. His own failure to do so does not trigger any exception to the RSA's exhaustion requirement.

In sum, Plaintiff has failed to plead that he exhausted all the RSA's required administrative requirements and none of RSA's exhaustion exceptions apply here. Accordingly, all of Plaintiff's claims must be dismissed. The Court dismisses these claims without prejudice. If Plaintiff chooses to file an amended complaint, he should be sure to clearly articulate the steps he took to exhaust the RSA's required administrative procedures for each of the incidents presented.

IV. <u>CONCLUSION</u>

For the reasons set forth above, the Court grants Defendants' motion to dismiss.

**Accordingly, IT IS** on this 31st day of January, 2025**,**

**ORDERED** that Defendants' motion to dismiss (ECF No. 18) is GRANTED; and it is further

**ORDERED** that Plaintiff's Complaint (ECF No. 1) is DISMISSED without prejudice.

**ORDERED** that to the extent Plaintiff can cure the pleading deficiencies identified in the Court's opinion, he shall have thirty (30) days from the date of this order to file an amended complaint. Insofar as Plaintiff submits an amended complaint, he shall also provide a form of the amended complaint that indicates in what respect it differs from the original complaint, by bracketing or striking through materials to be deleted and underlining materials to be added. *See* L. Civ. R. 15(a)(2).

**SO ORDERED.**

*/s/ Claire C. Cecchi*
**CLAIRE C. CECCHI, U.S.D.J.**